[No. 17520-3-I. Division One. May 26, 1987.]

MICHAEL DUANE HAMPSON, *Appellant,* v. WILLIAM RAMER, *Respondent.*

*Howard P. Pruzan* and *Miracle, Pruzan, Morrow, Pruzan & Johnson,* for appellant.

*Andrew J. Kinstler* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent.

SWANSON, J.—Michael Duane Hampson appeals the superior court judgment and order denying his new trial motion in his action against Denise Renee Ramer, a minor, and her father, William Ramer, for damages arising from an automobile accident. The sole issue raised in this appeal is whether the trial court abused its discretion in granting the Ramers' motion in limine to exclude evidence of Hampson's carpal tunnel syndrome as a sanction for a discovery violation.

## FACTS

On January 7, 1983 in Kent, Washington, Hampson injured his left shoulder when his car was struck from behind by Ramer's truck which was being driven by respondent Denise Ramer. In his complaint for damages stemming from the accident, Hampson alleged a "wrenching, hyper–extending and hyper–flexing of his neck" and an injury to his left shoulder, for which surgery was performed on April 7, 1983. The complaint stated that the "full nature, extent and permanency of his injuries are not presently known."

During a deposition of Dr. Aaron Kemp, Hampson's treating physician, on April 9, 1985, 2 days before the originally scheduled trial date, both the plaintiff and defense counsel learned for the first time that during Dr. Kemp's last examination of Hampson on March 5, 1985, he had determined that Hampson was suffering from a carpal tunnel syndrome in the left wrist. The next day Hampson was granted, upon request, a continuance of the trial date to August 30, 1985, on the basis that the plaintiff had just learned that he required additional surgery related to the accident and that a final evaluation could not be made until about 3 months following surgery.

On April 10, the same day that the continuance was obtained, the defense counsel wrote to Hampson's attorney requesting that he supplement on a continuing basis his answers to interrogatories with medical information related to the accident, particularly the carpal tunnel condition, so that the defense counsel could determine if an independent medical examination would be required prior to surgery for the condition. In the letter the defense counsel noted that he expected to be informed of all further treatment before the treatment was given. The letter stated that if the request was unacceptable, the defense counsel would resort to formal discovery techniques. By a letter dated April 17, 1985, Hampson's attorney agreed to the defense counsel's request that he be kept fully informed with regard to the carpal tunnel problem.

On April 10 an electrodiagnostic nerve conduction study, which showed a negative result, was performed on Hampson for the carpal tunnel syndrome, and on April 18, Hampson underwent corrective surgery for the syndrome without either counsel's knowledge. On April 19 Hampson's counsel sent to the defense counsel Dr. Kemp's April 10 report which stated that his more probable than not judgment was that the carpal tunnel syndrome was due to the automobile injury and that he would be conducting further testing.

The Ramers brought a pretrial motion in limine to exclude all evidence of the carpal tunnel syndrome based upon the prejudice to them from the performance of the wrist surgery without their prior knowledge, contrary to the counsel's agreement, since they were thus precluded from conducting their own independent presurgery examination to ascertain the condition's existence and causation although the symptoms were first reported 2 years after the car accident and the electrodiagnostic test result was negative. The motion was supported by Dr. Ted Rothstein's deposition testimony, which indicated the necessity of a presurgery examination to determine the condition's existence.

During the hearing on the motion, Hampson's counsel argued that the defense medical examiner, Dr. McCollum, had had the opportunity to examine Hampson's wrist before the surgery during Dr. McCollum's April 7, 1985 evaluation when, according to Hampson's deposition testimony, he had informed Dr. McCollum about his left hand going to sleep. The defense counsel responded that he had asked Dr. McCollum to examine only Hampson's left shoulder since he had not known of the carpal tunnel condition at the time.

In its well reasoned memorandum decision denying the new trial motion, the trial court stated that there was insufficient evidence that Dr. McCollum had conducted a proper presurgery examination for the carpal tunnel condition. The court granted the motion in limine based upon Hampson's noncompliance with discovery of the carpal tunnel condition prior to surgery in violation of the parties' agreement, with resulting irremediable prejudice to the Ramers.

At the close of the evidence at trial, the court directed a verdict of liability against the Ramers, and the jury found that Hampson was not comparatively negligent and awarded him $12,938.13 damages for his shoulder injury. Hampson's new trial motion was denied, and he was paid the judgment amount in full.

After filing an appellate brief, the respondent moved to dismiss the appeal pursuant to RAP 2.5(b) on the basis that the appellant has accepted the benefits of the trial court judgment. A commissioner's ruling referred the motion to dismiss to the panel of judges considering the merits of the appeal; however, in view of our affirmance of the trial court's ruling in considering the merits of this appeal, we need not decide whether the motion to dismiss should be granted and therefore decline to do so.

## DISCOVERY SANCTION

Hampson argues that the trial court's denial of his new trial motion should be reversed and the case remanded for

a trial restricted to the issue of damages stemming from the carpal tunnel syndrome. The granting or denial of a new trial motion will be undisturbed on appeal absent a showing of a manifest abuse of discretion. *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 812, 440 P.2d 834 (1968); *Dybdahl v. Genesco, Inc.*, 42 Wn. App. 486, 489, 713 P.2d 113 (1986).

The trial court's denial of Hampson's new trial motion rested upon its determination that it properly had granted the respondent's motion in limine to exclude evidence related to Hampson's carpal tunnel syndrome because of Hampson's failure to permit discovery of his presurgical wrist condition. In its memorandum decision denying Hampson's new trial motion, the trial court states that the respondent had requested in interrogatories information related to injuries resulting from the January 1983 accident and injuries suffered since the accident.

On the day that the original trial date's continuance was granted based upon the newly discovered carpal tunnel syndrome, the defense counsel wrote to Hampson's counsel requesting that interrogatory answers be supplemented with medical information about Hampson's carpal tunnel problem so that he could determine whether an independent medical examination would be necessary prior to surgery. By a return letter Hampson's counsel agreed to comply with the defense request.

CR 26(e)(3) and (4) provide:

> (3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.
>
> (4) Failure to seasonably supplement in accordance with this rule will subject the party to such terms and conditions as the trial court may deem appropriate.

*Barci v. Intalco Aluminum Corp.*, 11 Wn. App. 342, 349, 522 P.2d 1159, *review denied*, 84 Wn.2d 1012 (1974).

When Hampson's previously unannounced surgery precluded an independent defense presurgery medical exami-

nation of his wrist, the exclusion of evidence of the carpal tunnel syndrome was imposed as a sanction for noncompliance with a discovery request under CR 37(d). CR 37 is the enforcement section of the discovery rules. CR 37(d)[1] provides for the imposition of CR 37(b) sanctions, among others, for a party's failure to respond to discovery requests. *Pamelin Indus., Inc. v. Sheen–U.S.A., Inc.,* 95 Wn.2d 398, 401, 622 P.2d 1270 (1981). Among several sanctions listed under CR 37(b) is an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence". CR 37(b)(2)(B).

Relying upon *Smith v. Sturm, Ruger & Co.,* 39 Wn. App. 740, 695 P.2d 600, *review denied,* 103 Wn.2d 1041 (1985), Hampson argues that excluding evidence of his carpal tunnel syndrome was an abuse of discretion absent a showing of intentional or willful noncompliance with discovery. The *Smith* court stated regarding an alleged discovery violation that

> it is an abuse of discretion to exclude testimony as a sanction absent any showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct.

*Smith,* at 750, *quoted in Fred Hutchinson Cancer Research Ctr. v. Holman,* 107 Wn.2d 693, 706, 732 P.2d 974 (1987).

"The court should exclude testimony if there is a showing of intentional or tactical nondisclosure." *Lampard v. Roth,* 38 Wn. App. 198, 202, 684 P.2d 1353 (1984). Where no reason was given for the failure to respond to and to supplement the interrogatories or to comply with the order

---

[1]CR 37(d) provides in part:

"If a party . . . fails . . . (2) to serve answers or objections to interrogatories submitted under rule 33, after proper service of the interrogatories, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under sections (A), (B), and (C) of subsection (b)(2) of this rule." When CR 37 was amended effective July 1, 1972, the word "willfully" was omitted from subsection (d). *See* 80 Wn.2d 1208 (1972). CR 37's amendment effective September 1, 1985, did not affect subsection (d). 104 Wn.2d 1166 (1985).

compelling discovery, the *Lampard* court stated, "We are forced to conclude that these actions and omissions constitute a willful failure to comply with the discovery rules", and found an abuse of discretion in the trial court's failure to exclude the testimony of witnesses who were not disclosed prior to trial. *Lampard v. Roth,* at 202.

Where there was noncompliance with certain continuing pretrial interrogatories and subpoenas duces tecum, with which the trial court ordered compliance, this court granted a new trial, stating, "A violation of the discovery rules is willful if done without a reasonable excuse." *Taylor v. Cessna Aircraft Co.,* 39 Wn. App. 828, 836, 696 P.2d 28, *review denied,* 103 Wn.2d 1040 (1985).

■ Here Hampson claims that no willful or intentional nondisclosure has been shown since he did not know about his counsel's agreement to keep the defense counsel informed regarding his carpal tunnel condition and his counsel did not know about the wrist surgery until after it was performed. Between the parties, however, it was within Hampson's control to prevent the surgical alteration of evidence which occurred here, precluding defense discovery of the presurgical condition, if his counsel had promptly notified Hampson of the need to keep the defense abreast of developments regarding the carpal tunnel syndrome during the 8 days between the defense request and the date of the wrist surgery.

No reasonable excuse has been put forth here. Absent such an excuse, the noncompliance with discovery may be deemed to be willful under *Taylor v. Cessna Aircraft Co., supra.* Where a willful noncompliance with discovery substantially prejudices the opponent's ability to prepare for trial, the exclusion of evidence is not an abuse of discretion. *Lampard v. Roth, supra; Associated Mortgage Investors v. G.P. Kent Constr. Co.,* 15 Wn. App. 223, 228–29, 548 P.2d 558, *review denied,* 87 Wn.2d 1006 (1976).

■ Even if the noncompliance with discovery here, absent a reasonable excuse, were not deemed to be willful under *Taylor v. Cessna Aircraft Co., supra,* the trial court

did not abuse its discretion. The choice of sanctions for a discovery violation is discretionary and the particular facts and circumstances of each case will determine whether the discretion has been abused. *Anderson v. Mohundro,* 24 Wn. App. 569, 574, 604 P.2d 181 (1979), *review denied,* 93 Wn.2d 1013 (1980).

In *Miller v. Peterson,* 42 Wn. App. 822, 825, 714 P.2d 695, *review denied,* 106 Wn.2d 1006 (1986), this court, citing *Barci v. Intalco Aluminum Corp., supra* at 351, recognized the general rule that testimony should not be excluded absent intentional or willful nondisclosure or other unconscionable conduct. However, weighing the factors set forth in *Barci* in deciding whether to exclude or permit testimony from a witness who was unobtainable and was undisclosed until just before trial or until after trial had begun, the *Miller* court found that the exclusion of certain expert witnesses' testimony in that case was not error even though the record did not disclose a violation of a court order or any other unconscionable conduct. The *Miller* court noted that the most important factor in its determination was the prejudice to the party opposing the testimony of the belatedly disclosed expert witnesses. *Miller,* at 825–26.

Here the Ramers claim that they were irreparably prejudiced in the preparation of their defense by being denied the opportunity to conduct an independent presurgery examination of Hampson's alleged carpal tunnel condition since they were thereby precluded from obtaining another opinion regarding the condition's existence and causation. The prejudice to the Ramers is the same regardless of whether Hampson's action or omission was willful.

In his deposition supporting the defense motion in limine, Dr. Rothstein's uncontroverted testimony was that a presurgery medical examination is critical to ascertaining the existence of a carpal tunnel syndrome and that in this case particularly since the electrodiagnostic study done upon Hampson was negative, a postsurgery medical examination would be useless in determining the existence of a

presurgery condition. We note that there is no evidence that the timing of Hampson's wrist surgery was dictated by a medical emergency.

While Hampson claims that he had informed the defense medical examiner, Dr. McCollum, about his left hand going to sleep, the trial court found insufficient evidence that Dr. McCollum had conducted a proper presurgery examination for the carpal tunnel condition since the defense counsel stated that he had asked Dr. McCollum to examine Hampson only for the shoulder injury since he was unaware of the carpal tunnel condition at the time. Hampson did not support his motion for a new trial with any statement by Dr. McCollum that he had in fact examined Hampson for the carpal tunnel condition before surgery was performed. Moreover, while Hampson's electrodiagnostic test result was negative, Dr. Kemp, the plaintiff's treating physician, stated that about one–third of the time an electrodiagnostic test shows a negative result although the carpal tunnel condition is present.

In *Wong v. City & Cy. of Honolulu,* 66 Hawaii 389, 665 P.2d 157, 161 (1983), the Hawaii Supreme Court upheld the original trial court's imposition of the discovery sanction of declaring the City's negligence where under CR 37(b)(2)(A) and (B) the court could designate certain facts to be deemed to be established for purposes of the action and prevent the City from asserting certain defenses. In *Wong,* after both informal and formal requests for production of the traffic signal control box which was malfunctioning at the time of the accident, a private contractor, under City employees' supervision, subsequently destroyed the control box without the plaintiffs' knowledge. *Wong,* 665 P.2d at 159.

The *Wong* court stated:

The sanction imposed by Judge Fong is commensurate with the prejudice suffered by the plaintiffs as a result of the City's destruction of the traffic signal control box. If the control box had been produced, plaintiffs would have had the opportunity to prove through their experts that

the traffic light malfunction was caused by the City's improper maintenance of the control box. Since the box and its contents were destroyed due to the fault of the City, it is only fair that sanctions be imposed so that the City does not benefit from its destruction of potentially significant evidence.

*Wong v. City & Cy. of Honolulu, supra* at 394.

The reasoning in *Wong* applies to the instant case. Here the exclusion of evidence supporting Hampson's carpal tunnel claim was not an abuse of discretion where the sanction was commensurate with the prejudice suffered by the respondent by the surgical alteration of Hampson's condition which deprived the respondent of the opportunity to conduct an independent medical examination in preparing a defense to that claim. Since the alteration of the evidence was within Hampson's control, it is only fair that the sanction be imposed so that Hampson does not benefit from the alteration of potentially significant evidence.

While Hampson attempts to distinguish *Wong* on the basis that in the instant case there is no suggestion of a deliberate attempt to alter evidence needed by the defense, the *Wong* court never mentions a deliberate intent by the City to destroy evidence but merely places the fault for the destruction of the evidence upon the City since the destruction occurred under City employees' supervision. Here the evidence's alteration occurred with Hampson's acquiescence so that between the parties, Hampson should bear the responsibility.

Hampson does not propose a less drastic alternate sanction which would provide adequate protection of the respondent's right to prepare a defense against his carpal tunnel claim without independent evidence of the presurgery condition. *See Anderson v. Mohundro, supra; Associated Mortgage Investors v. G.P. Kent Constr. Co., supra* at 229–30. The imposition of a de minimis sanction would undermine the purpose of discovery, *Gammon v. Clark Equip. Co.,* 38 Wn. App. 274, 282, 686 P.2d 1102 (1984),

*aff'd on other grounds*, 104 Wn.2d 613 (1985), which is to "'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent", *Gammon*, at 280 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 2 L. Ed. 2d 1077, 78 S. Ct. 983 (1958)); *accord, Taylor v. Cessna Aircraft Co., supra* at 835. *See Taylor*, at 836.

In light of the particular facts and circumstances of this case, including the absence of an adequate alternate sanction, the trial court did not abuse its discretion here.[2] *Anderson v. Mohundro, supra.*

The trial court's judgment and order denying the new trial motion are affirmed.

RINGOLD, A.C.J., and WEBSTER, J., concur.

Reconsideration denied July 20, 1987.

---

[2]We do not address Hampson's arguments regarding the timeliness and use of the defense motion in limine which are put forth for the first time on appeal. RAP 2.5(a); *Fred J. Moore, Inc. v. Schinmann*, 40 Wn. App. 705, 711, 700 P.2d 754 (1985).