# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SPOKEO, INC., <br>          Appellant. <br>    v. <br><br> WHITEPAGES, INC. <br><br>          Respondent. | No. 78897-3-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

LEACH, J. — Spokeo primarily appeals the trial court's decision to award Whitepages' judgment as a matter of law notwithstanding a jury's verdict in its favor. Spokeo also challenges the trial court's decision not to answer certain jury questions and its refusal to give Spokeo's anticipatory repudiation instructions to the jury. Finally, Spokeo claims the trial court should not have allowed the jury to decide a spoliation issue, and it should have sanctioned Whitepages for a discovery violation.

Spokeo fails to show that substantial evidence supports the jury's verdict on its Consumer Protection Act (CPA) claim, or that it was entitled to an anticipatory repudiation jury instruction. The record shows the trial court did not abuse its discretion by refusing to answer some jury questions or by refusing to sanction Whitepages for alleged discovery violations. Finally, the trial court acted within its discretion by submitting a spoliation issue to the jury to decide. We affirm.

Citations and pincites are based on the Westlaw online version of the cited material.

**FACTS**

Whitepages is a technology company that provides online information about people. It sold advertising spaces on its website and used an auction process to sell companies advertising space for a specified time. Some of the companies purchasing advertising space also provided online information about people such as names, phone numbers, addresses, and criminal backgrounds. The parties have referred to these companies as "endemic partners." Spokeo was one of these companies. When a customer arrived at Whitepages' website, and clicked on Spokeo's advertisement, the customer would then visit Spokeo's website. Spokeo would pay Whitepages for the click or "interaction."

Over time, Whitepages developed its own product for providing information about people similar to the product provided by some of the endemic partners. Whitepages notified its advertisers that it was testing this new product. Later, it informed the endemic partners, including Spokeo, that it would stop holding auctions. Spokeo considered Whitepages' actions a breach of contract. It refused to pay Whitepages' last invoice for February 2016 even though Spokeo received clicks and customer interactions from the Whitepages' website the whole month.

Spokeo sued Whitepages on April 6, 2016. It asserted claims for breach of contract and implied duties of good faith, violation of the Washington Consumer Protection Act (CPA), negligent misrepresentation, fraudulent inducement, statutory penalties, and injunctive relief. Whitepages responded by suing Spokeo for breach of contract for not paying its February 2016 invoice.

The jury found for Spokeo on the CPA claim, but found that Whitepages did not breach the contract, did not make any negligent misrepresentations, or commit fraud. It also found that Spokeo breached the contract.

After the trial, the trial court granted Whitepages' renewed request for judgment as a matter of law. It decided the "evidence and the reasonable inferences are legally insufficient to support the jury's verdict on Spokeo's CPA claim." The trial court awarded Whitepages' attorney fees based on Spokeo's contract breach and awarded Spokeo fees and costs for Whitepages' spoliation. Spokeo appeals.

**ANALYSIS**

Washington Consumer Protection Act Claim[1]

Spokeo challenges the trial court's decision under CR 50 to dismiss its CPA claim.

We review a trial court's CR 50 decision de novo.[2] A trial court properly grants a judgment notwithstanding the jury's verdict under CR 50 when "'viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'"[3] "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the premise is true."[4]

---

[1] Spokeo also claims the trial court's order denying Spokeo's motion for a new trial is void under RAP 7.2(e) because the trial court did not have the authority to decide it. Spokeo filed an appeal. RAP 7.2(e) states that: "If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." Because denying Spokeo a new trial would not "change a decision…being reviewed by the appellate court," the trial court had authority to enter this order.

[2] Davis v. Microsoft Corp., 149 Wn.2d 521, 531, 70 P.3d 126 (2003).

[3] Davis, 149 Wn.2d at 531 (quoting Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997)).

[4] Jenkins v. Weyerhaeuser Co., 143 Wn. App. 246, 254, 177 P.3d 180 (2008).

Spokeo claims the trial court "ignored the law of the case" and applied law different than stated in the court's instructions to the jury.

Contrary to Spokeo's position, a "court must follow Washington law, not jury instructions" when considering a motion for judgment as a matter of law.[5] This means that an appellate court looks to controlling case law, and not jury instructions, when reviewing a trial court's CR 50 decision.

The CPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[6] To prevail on a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.[7]

Unfair or Deceptive Act or Practice and Public Interest Impact

"Whether an action constitutes an unfair or deceptive practice is a question of law."[8] An act or practice is unfair or deceptive if it has the capacity to deceive a substantial portion of the public.[9] "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance."[10]

---

[5] Kim v. Dean, 133 Wn. App. 338, 349, 135 P.3d 978 (2006) (quoting Hanson v. Ford Motor Co., 278 F.2d 586, 593 (8th Cir. 1960).
[6] RCW 19.86.020.
[7] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784–85, 719 P.2d 531 (1986).
[8] Columbia Physical Therapy, Inc., PS v. Benton Franklin Orthopedic Assocs., PLLC, 168 Wn.2d 421, 442, 228 P.3d 1260, 1270 (2010).
[9] State v. Pacific Health Ctr, Inc., 135 Wn. App. 149, 170, 143 P.3d 618 (2006).
[10] Holiday Resort Comty. Ass'n v. Echo Lake Assoc., LLC, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).

An act or practice is injurious to the public interest if it "(a) [i]njured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons."[11] A plaintiff must show "not only that a defendant's practices affect the private plaintiff but that they also have the potential to affect the public interest."[12]

"Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest...It is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest."[13] This means when a transaction essentially involves a private dispute, a party may have more difficulty showing that the public has an interest in the subject matter.[14] Here, Spokeo claims that because Whitepages injured it and the other endemic partners, "the evidence was more than sufficient to meet [the public interest] test." But, this evidence does not prove the public interest prong of the CPA claim. "Only acts that have the capacity to deceive a substantial portion of the public are actionable."[15]

Our Supreme Court has identified four factors to consider when analyzing public interest impact:

> "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal

---

[11] RCW 19.86.093(3).

[12] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74, 170 P.3d 10 (2007) (citing Hangman Ridge, 105 Wn.2d at 788; Lightfoot v. MacDonald, 86 Wn.2d 331, 335–36, 544 P.2d 88 (1976)).

[13] Hangman Ridge, 105 Wn.2d at 790–91 (citing Lightfoot, 86 Wn.2d at 334, and McRae v. Bolstad, 101 Wn.2d 161, 166, 676 P.2d 496 (1984)).

[14] Hangman Ridge, 105 Wn.2d at 790.

[15] Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wn. App. 732, 744, 935 P.2d 628 (1997) (citing Hangman Ridge, 105 Wn.2d at 785).

bargaining positions? As with the factors applied to essentially consumer transactions, not one of these factors is dispositive, nor is it necessary that all be present. The factors in both the "consumer" and "private dispute" contexts represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact."[16]

Whitepages' acts only affected Spokeo and the other endemic partners. These parties are sophisticated businesses and occupy equal bargaining positions.[17] And, while Whitepages committed the accused acts in the course of its business, it did not target its actions at the public. They were not likely to injure additional parties, unlike cases where the courts found the public interest prong satisfied.[18]

When an unfair or deceptive act only affects a select few in a niche market, as here, it does not affect "public interest."[19] "Significantly, conduct that is not directed at the public, but, rather, at a competitor, lacks the capacity to impact the public in general."[20]

Spokeo has not explained how Whitepages' actions did, or had the potential to, affect a large number of people, and it fails to show how Whitepages' conduct affected the public in any way. Because Spokeo fails to establish the public interest element of its CPA claim, no substantial evidence exists showing Whitepages violated the CPA.

Jury Questions

Spokeo claims the trial court should have answered two jury questions asking whether the jury must find all the elements in both independent negligent

---

[16] Hangman Ridge, 105 Wn.2d at 790–91.
[17] Broten v. May, 49 Wn. App. 564, 571, 744 P.2d 1085 (1987).
[18] Edmonds v. John L. Scott Real Estate, Inc., 87 Wn. App. 834, 847, 942 P.2d 1072 (1997), Stephens v. Omni Ins. Co., 138 Wn. App. 151, 178, 159 P.3d 10 (2007).
[19] Goodyear, 86 Wn. App. at 744-45.
[20] Evergreen Moneysource Mortg. Co. v. Shannon, 167 Wn. App. 242, 261, 274 P.3d 375 (2012) (citing Goodyear, 86 Wn. App. at 744).

misrepresentation instructions to find for Spokeo on the negligent misrepresentation claim.

The trial court has discretion to decide whether to give further instructions to a jury after deliberations begin.[21] An appellate court reviews for abuse of that discretion by a trial court's refusal to give an additional instruction.[22] When a jury instruction accurately states the law, the trial court need not provide further instructions.[23] The court has no duty to answer the jury's question.[24]

During deliberations, the jury asked two questions related to Spokeo's negligent misrepresentation claim involving jury instructions 30 and 32. Jury instruction 30 stated:

> Spokeo has the burden of proving by clear, cogent, and convincing evidence each of the following elements for the claims of negligent misrepresentation:
>
> (1) that Whitepages supplied information for the guidance of Spokeo in Spokeo's business transactions that was false;
> (2) that Whitepages knew or should have known that the information was supplied to guide Spokeo in business transactions;
> (3) that Whitepages was negligent in obtaining or communicating the false information;
> (4) that Spokeo relied on the false information;
> (5) that Spokeo's reliance on the false information was reasonable; and
> (6) that the false information proximately caused damages to Spokeo…
>
> Jury instruction 32 stated:
>
> Spokeo has the burden of proving by clear, cogent, and convincing evidence each of the following elements for the claim of negligent misrepresentation:
>
> (1) that Whitepages had a duty to disclose to Spokeo certain information;

---

[21] State v. Ng, 110 Wn.2d 32, 42, 750 P.2d 632 (1988).
[22] A.C. v. Bellingham Sch. Dist., 125 Wn. App. 511, 516, 105 P.3d 400 (2004).
[23] Ng, 110 Wn.2d at 42–44; State v. Sublett, 156 Wn. App. 160, 184, 231 P.3d 231 (2010).
[24] State v. Langdon, 42 Wn. App. 715, 718, 713 P.2d 120, review denied, 105 Wn.2d 1013 (1986).

(2) that Whitepages did not disclose this information to Spokeo;

(3) that Whitepages was negligent in failing to disclose this information;

(4) that Plaintiff was damaged by the failure to disclose this information.

On February 20, 2018, the jury's first question asked was if it must "find [whether] all of the elements in both [i]nstructions are true to give a verdict for Spokeo?" The court replied, "Please read both instructions carefully and follow both instructions as applicable."

On February 22, 2018, the jury asked again for "clarification on whether <u>one</u> or <u>both</u> sets of criteria need to be satisfied in order for our verdict to be for Spokeo," stating that "[s]everal of our votes depend on this." The court instructed, "The jury instructions and the admitted exhibits contain all of the information that is relevant for purposes of reaching your verdict regarding the plaintiff[']s claims. Please read the instructions carefully and follow them as applicable." The jury found for Whitepages on Spokeo's negligent misrepresentation claim.

Spokeo analogizes this case to State v. Campbell.[25] There, the court held that the instructions "did not accurately inform the jury of the law."[26] Spokeo's analogy has a fatal flaw. The court's original instructions accurately informed the jury of the applicable law. Spokeo does not dispute the accuracy of these instructions. Instead, Spokeo contends the court should have clarified whether the jury had to find all elements described in each instruction to find for Spokeo on the negligent misrepresentation claim.

---

[25] 163 Wn. App. 394, 260 P.3d 235, rev'd on other grounds, No. 66732–7–I, 2012 WL 5897625 (Wash. Ct. App. Nov. 26, 2012).
[26] 163 Wn. App. at 401.

Because Spokeo does not assign any error to any actual jury instruction or cite to conflicting controlling law,[27] and because a trial court is not required to further instruct a jury about accurate jury instructions, the trial court did not abuse its discretion in failing to answer the jury's questions.[28]

Waiver of Affirmative Defense

Spokeo challenges the trial court's ruling that because Spokeo did not affirmatively plead the anticipatory repudiation defense it waived this defense. Where the parties do not dispute the facts, we review waiver as a question of law subject to de novo review.[29]

Assuming, without deciding, that Spokeo did not waive the anticipatory repudiation defense, it fails to show it was entitled to a jury instruction on this defense. For a party to be entitled to have the jury instructed about an affirmative defense, the record must include sufficient evidence "to permit a reasonable juror to conclude that the defendant has established the defense…by a preponderance of the evidence."[30]

First, Spokeo does not challenge the jury's finding that Whitepages did not breach the contract. So, we accept this unchallenged finding as true for purposes of this appeal.[31] A Whitepages breach would be required for Spokeo to succeed on the anticipatory repudiation affirmative defense. Since Spokeo accepts the finding that

---

[27] State v. Logan, 102 Wn. App. 907, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

[28] Spokeo also fails to provide any controlling case law on this issue in its 30-page reply brief.

[29] Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 440–41, 191 P.3d 879 (2008).

[30] State v. Trujillo, 75 Wn. App. 913, 917, 883 P.2d 329 (1994).

[31] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Whitepages did not breach its contract with Spokeo, it cannot show that the court's refusal to instruct on anticipatory repudiation harmed it.

Also, Spokeo does not identify evidence in the record that shows it was entitled to the defense. It claims an anticipatory repudiation occurred because Whitepages charged Spokeo for clicks and impressions after it terminated the Marketplace Program. But, Spokeo does not dispute it continued receiving clicks after Whitepages discontinued Marketplace. So, Spokeo fails to explain how Whitepages anticipatorily repudiated the contract. The trial court did not abuse its discretion by refusing to give Spokeo's proposed anticipatory repudiation jury instructions.

Discovery Violations

Spokeo asserts the trial court should not have allowed the jury to decide a spoliation issue about evidence related to Whitepages' messaging platform "Yammer."

If a party commits spoliation, the fact finder may infer the evidence was harmful to the party's case.[32] After Spokeo sued Whitepages, both parties agreed on a Stipulated Protective Order and Confidentiality Agreement. Spokeo then asked the court to compel discovery. The trial judge granted this request in part by ordering Whitepages to "fully respond" to Spokeo's discovery requests "as modified."

Whitepages' employees used a Microsoft messaging platform called Yammer to communicate with each other. Whitepages ended its Yammer license agreement and Microsoft informed Whitepages that it deleted Whitepages' communications. Spokeo requested copies of "Yammer.com conversations from Whitepages' employees." In April

---

[32] Pier 67, Inc. v. King Cty, 89 Wn.2d 379, 385-86, 573 P.2d 2 (1977).

2017, Whitepages responded that it had no such documents in its possession, custody, or control, and because Whitepages' had discontinued use of Yammer, it could not produce documents.

After Spokeo made numerous requests about discovery, the court ordered Whitepages to "make the Yammer files available to a third-party vendor chosen by Plaintiff's counsel on an expedited basis." Although Whitepages only produced 31 Yammer messages, a third-party discovery vendor found 187 Yammer messages using the same search terms used by Whitepages, which was 156 more messages than Whitepages produced.

Spokeo claimed that Whitepages' withholding of the Yammer messages "substantially prejudiced" it. The trial court made the following find about this issue:

> "At a minimum, the Defendant's actions and omissions kept the native Yammer files out of the Plaintiff's reach during the discovery phase of this case, and prevented the Plaintiff from having any reasonable opportunity to evaluate the files and follow up on any leads that there may be in those files during discovery. The court finds that the serious investigative disadvantage that the Defendant's conduct caused the Plaintiff is substantial prejudice. As noted above, it is not possible to quantify precisely the amount of prejudice because it cannot be known how many files have been deleted, corrupted, fragmented, omitted, or otherwise lost. It also cannot be known where possible leads from any of the native Yammer files might have taken the Plaintiff during discovery, what additional written discovery requests the Plaintiff may have served, or what additional depositions the Plaintiff might have taken, or what additional relevant evidence the Plaintiff might have pursued and found."

When discussing sanctions, the court stated, "the Plaintiff is entitled to recover its reasonable costs, including its reasonable attorneys' fees and costs, incurred in litigating Plaintiff's CR 37(b) discovery violation, which necessarily includes the fees and costs incurred in litigating the spoliation issue." The trial court also ruled it would give the jury an instruction "allowing (but not requiring) the jury to infer that the Yammer.com account

was terminated for the reason that the Defendant was concerned that some information in the native Yammer files was (or might be) adverse to the Defendant's case" and an instruction "allowing (but not requiring) the jury to infer that, had the native Yammer files been turned over during discovery, the files would have contained relevant admissible evidence favorable to the Plaintiff's claims and harmful to Whitepages' defense."

Spokeo asks this court to hold that whenever a party fails to produce evidence, the court must draw a spoliation inference. But, it provides no authority to support its claim. Rather, the one case it does cite, Pier 67, Inc. v. King Cty., states that when a party destroys evidence, the only inference that the fact-finder may draw is that such evidence would be unfavorable to him.[33] This does not mean when a party destroys evidence the court is required to draw this inference. It simply means, that at most, a fact-finder may conclude the evidence is unfavorable. Spokeo does not support with any authority its claim that the trial court should not have allowed the jury to decide the spoliation issue. The trial court did not abuse its discretion by allowing the jury to decide what inference to draw.

PowerPoint Slides

Spokeo next claims the trial court should have sanctioned Whitepages when it learned it failed to disclose certain PowerPoint slides from a January 2015 Board meeting.

A trial court has discretion to impose sanctions for discovery violations and we will not reverse those decisions absent a showing of abuse of discretion.[34] A trial court

---

[33] 89 Wn.2d 379, 385-86, 573 P.2d 2 (1977).
[34] Henderson v. Tyrrell, 80 Wn. App. 592, 604, 910 P.2d 522 (1996) (citing to Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 283, 840 P.2d 860 (1992); Hampson v. Ramer, 47 Wn. App. 806, 813, 737 P.2d 298 (1987).

abuses its discretion when its order is manifestly unreasonable or based on untenable grounds.[35] A trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.[36]

To decide whether spoliation requires a sanction, courts weigh: "(1) the potential importance or relevance of the missing evidence; and (2) the culpability or fault of the adverse party."[37]

Spokeo claims Whitepages "withheld 54 slides from the January 2015 PowerPoint." But, Spokeo does not cite where the record it shows this.[38] More significantly, Spokeo does not show that the nondisclosure of the PowerPoint slides prejudiced it.

The trial court found that the documents Spokeo claims Whitepages withheld were in Spokeo's possession, and Spokeo failed to complain about incompleteness when they were in their possession. The trial court stated, during a February 7, 2018 hearing, that it did not see any prejudice at that time and again at a February 12, 2018 hearing stated, "I don't think there is sufficient evidence of prejudice on the record." The court also noted that Whitepages made a prima facie case showing its failure to produce the missing slides was a mistake. Because Spokeo provides no basis for the assertion that the trial court abused its discretion in failing to impose sanctions, this claim fails.

---

[35] Holbrook v. Weyerhaeuser Co., 118 Wn.2d 306, 315, 822 P.2d 271 (1992); Watson v. Maier, 64 Wn. App. 889, 896, 827 P.2d 311, review denied, 120 Wn.2d 1015, 844 P.2d 436 (1992).
[36] Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S. Ct. 2447, 2460–61, 110 L. Ed. 2d 359 (1990).
[37] Henderson, 80 Wn. App at 607.
[38] RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Attorney Fees

Spokeo requests attorney fees and costs under the CPA claim. Because we affirm the dismissal of Spokeo's CPA claim, we deny its request for attorney fees. Whitepages also requests attorney fees and costs for "defending the verdicts on the breach of contract claims." Because Spokeo did not appeal the jury verdict on the breach of contract claim, we deny Whitepages' request for attorney fees.

**CONCLUSION**

We affirm. The record contains insufficient evidence to support the jury's verdict on Spokeo's CPA claim. Also, the trial court did not abuse its discretion by declining to respond to the jury's questions with additional instructions. Spokeo identifies no evidence in the record showing how Whitepages anticipatorily repudiated the contract. And, Spokeo fails to show the trial court abused its discretion by allowing the jury to decide what inference to draw from spoliation. Finally, Spokeo fails to show how the trial court abused its discretion in failing to sanction Whitepages.

_____
Leach, J.

WE CONCUR:

_____         _____
Mann, C.J.                        Appelwick, J.

- 14 -